# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ERNESTO F. AHUMADA

VERSUS

BELCHER MANAGEMENT, LLC,
TURNBERRY PLACE, LLC, ALICIA
BELCHER, AND LANCE B. BELCHER

CIVIL ACTION

NO. 12-00685-SDD-SCR

## **RULING**

This matter is before the Court on a *Motion for Summary Judgment*[1] filed by Defendants, Belcher Management, LLC, Turnberry Place, LLC, Alicia Belcher, and Lance B. Belcher ("Defendants"). Plaintiff, Ernesto Ahumada ("Ahumada"), has filed an *Opposition*[2] to which Defendants have filed a *Reply*.[3]

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Ahumada brings this employment discrimination lawsuit against Defendants arising out of his alleged unlawful termination based upon his sex. For approximately four and one-half years, Ahumada alleges he worked in different capacities for the Defendants. When he began working for Defendants in 2007, Ahumada was hired as an Assistant Manager at Jefferson Shadows. In April of 2009, Ahumada was transferred from Jefferson Shadows to Turnberry Place Apartments (Turnberry) where he worked as an Executive Assistant to Lance Belcher and as an Assistant Manager/Leasing Agent. As a perk, Ahumada alleges he was given a rent-free apartment at Turnberry for which he did not have to sign a lease. Less than two years

---

[1] Rec. Doc. 33.
[2] Rec. Doc. 42.
[3] Rec. Doc. 43.

DM No. 1681         1

later, on January 3, 2011, Ahumada entered into a three year lease; however, he owed no monthly rental fees because it was considered part of his compensation. Ahumada contends that, pursuant to this lease, Lance Belcher would pay Ahumada $1050.00 per month for the remaining time on the lease in the event he was asked to move from his apartment. Ahumada contends that while working as the Assistant Manager at Turnberry, he was subjected to unwelcome sexual conduct at the hands of his supervisor and Property Manager, Alicia Belcher. Ahumada alleges that Belcher retaliated by firing him after he reported Alicia Belcher's inappropriate behavior.

On May 22, 2010, Ahumada filed an EEOC Charge against Belcher Management asserting he had been subject to discrimination based on sex and retaliatory discharge. Within the charge, he asserted that, although he requested Alicia Belcher stop touching him inappropriately in May or June of 2011, she failed to do so. Ahumada further alleged that the unwelcome sexual conduct escalated to the point of Alicia Belcher sending him an email in December of 2011 with video images of her husband, Lance Belcher, masturbating. Ahumada asserts that, when he voiced his complaints to Lance Belcher, he was directed to address his issues directly to Alicia Belcher. On January 4, 2012, after confronting Alicia Belcher in the presence of Lance Belcher and Kathy Clayton about the email solicitation, Ahumada was terminated.

After receiving his right to sue letter, Ahumada filed this federal lawsuit asserting Title VII claims and supplemental state law claims. In his *Complaint*[4], Ahumada alleges that his employer Belcher and joint employer Turnberry violated Title VII by subjecting him to a hostile work environment, where he was sexually harassed, and ultimately

---

[4] Rec. Doc. 1.

discharged him in retaliation for complaining of the hostility and harassment.[5] He also asserts supplemental state law claims for breach of contract against Defendants, Belcher Management and/or Lance Belcher, arising out of the January 3, 2011 lease and a state law defamation claim against Alicia Belcher.[6] In his *First Amended and Supplemental Complaint*[7], Ahumada added no new defendants but broadened the scope of his joint employer argument to include The Forest, LLC ("Forest") and The Emerald Forest ("Emerald").[8]

The Defendants have answered[9] Ahumanda's *Complaints* and now move for summary judgment.[10] They contend summary judgment is appropriate because neither Belcher nor Turnberry meet the statutory definition of employer under Title VII. Moreover, they contend that the Court lacks jurisdiction over Forest and Emerald, a Limited Partnership, because Ahumada has failed to exhaust his administrative remedies as to these entities, as well as Turnberry, because Belcher was the only employer named and identified in the EEOC charge. They further argue that neither Forest nor Emerald was ever named as a Defendant in this lawsuit; hence, the Court lacks personal jurisdiction over these non-parties. Ahumada filed a memorandum in opposition wherein he raised in argument for the first time that Jefferson Shadows, a non-party, was also his joint employer.[11] For the following reasons, the Defendants' *Motion for Summary Judgment*[12] shall be granted.

---

[5] Rec. Doc. 1, pp. 2 and 7. At no point has Ahumada alleged that Lance B. Belcher or Alicia Belcher were his employers.
[6] Rec. Doc. 1, p. 8.
[7] Rec. Doc. 21.
[8] Rec. Doc. 21, pp. 1-2.
[9] Rec. Docs. 14 and 22.
[10] Rec. Doc. 33.
[11] Rec. Doc. 42. Jefferson Shadows is not a named Defendant in this case, was not named in his EEOC Charge, and there are no allegations in either his original or amended complaint suggesting that Jefferson

## II. LAW

### A. Plaintiff's Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[14] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[15] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[16] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[17]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[18] All reasonable factual

---

Shadows is one of Ahumada's joint employers or an integrated business. For these reasons, the Court will not entertain Plaintiff's last minute attempt to revive his joint employer argument.
[12] Rec. Doc. 33.
[13] Fed. R. Civ. P. 56(a).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[15] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[16] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[17] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[18] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

inferences are drawn in favor of the nonmoving party.[19]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[20]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint.""'[21]

### B. Statement of Material Facts

On summary judgment, factual controversies are resolved in the non-movant's favor. However, this occurs "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. [Courts] *do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*"[22]  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Ahumada, the non-movant, is obliged to set forth specific facts showing a genuine issue for trial. Local Rule 56.2 requires a non-moving party to submit disputed facts as to which there is a genuine issue to be tried. As this Court recently explained, "wherever Plaintiff fails to direct the Court to specific evidence in the record to controvert the supporting evidence set forth by the Defendant … the fact is deemed admitted for purposes of LR 56.2."[23]  Here lies the rub.

---

[19] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[20] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[21] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[22] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(emphasis original).
[23] *Antoon v. Woman's Hospital Foundation d/b/a Woman's Hospital*, 2012 WL 1094715, *n.2 (M.D.La. 5/30/12).

In his *Statement of Material Facts,*[24] Ahumada offers one evidentiary challenge of hearsay as to the EEOC's Dismissal and Notice of Rights' letter.[25] Defendants do not rebut the hearsay challenge in their *Reply Brief*. Nevertheless, as to the Defendants' remaining facts, Ahumada simply "disagrees" with them, offering no evidentiary support to buttress his position except on one occasion.[26] Ahumada disagrees with Defendants' stated fact that Belcher never employed more than 15 employees for the calendar years 2010, 2011, and 2012, and he directs the Court to "See Exhibits to the Memorandum in Opposition to Motion for Summary Judgment."[27] His referenced exhibits include 30 numbered exhibits, Plaintiff's 28 page declaration, and six deposition transcripts totaling in excess of 390 pages. It is well-settled that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[28] Accordingly, the Court finds, even disregarding the EEOC's Dismissal and Notice of Rights' letter, that Ahumada has failed to carry his burden of establishing a genuine issue of material fact by controverting the Defendants' facts and supporting evidence within its *Statement of Facts in Dispute*. Therefore, pursuant to Local Rule 56.2, all of Defendants' *Statement of Uncontested Material Facts*, with the exception of Statement number 8, are deemed admitted.

---

[24] Rec. Doc. 42-13.
[25] Defendants' *Statement of Undisputed Facts* (Rec. Doc. 33-2) No. 8 provides: "In dismissing Plaintiff's Charge of Discrimination, the Equal Employment Opportunity Commission determined that Defendants did not employ the required number of employees or was not otherwise covered by the relevant statutes." Defendants rely on the EEOC's Dismissal and Notice of Rights Letter.
[26] In response to Defendants' *Statement of Uncontested Facts*, Plaintiff also poses nine questions, such as "8. Was Belcher Management, LLC Plaintiff's Employer?" and "10. Was Plaintiff subject to sexual harassment in the work place?"
[27] Rec. Doc. 42-13, p. 1.
[28] *Keen v. Miller Environmental Group, Inc.*, 702 F.3d 239, 249 (5th Cir. 2012)(quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)(quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 n.7 (5th Cir. 1992)).

### III. Analysis

#### A. Employer for Purposes of Title VII

Title VII prohibits an employer from discriminating against an employee on the basis of his race, color, religion, sex, or national origin. In this instance, Ahumada has alleged that his employers subjected him to a hostile work environment based on sexual harassment and retaliated against him by terminating him when he complained about alleged harassment. However, in order for Ahumada to maintain his Title VII claims against his alleged employers, they must meet the statutory definition of employer. An employer is specifically defined as any "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[29] The current calendar year for purposes of the 15 employee minimum under Title VII means the year in which the alleged discrimination occurred.[30]

"The filing of an administrative complaint is a prerequisite to a Title VII suit."[31] Accordingly, the Court may only consider the specific allegations made in Ahumada's EEOC Charge, together with "any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to **grow out of** the initial charges of discrimination."[32] It is undisputed that Ahumada filed his EEOC Charge against Belcher Management on May 22, 2012; therefore, the Court shall limit its consideration of Ahumada's claims of discrimination to those contained therein and that could have been expected to grow out of these initial

---

[29] 42 U.S.C. § 2000e(b).
[30] *Dumas v. Town of Mount Vernon, Ala.*, 612 F.2d 974, n. 6 (5th Cir. 1980)(overruled on other grounds).
[31] *Thomas v. Atmos Energy Corp.*, 223 Fed.Appx. 369, 376 (5th Cir. 2007).
[32] *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)(emphasis added).

charges.[33] Based on his EEOC Charge, Ahumada experienced sexual harassment and retaliation at the hands of his employer, Belcher, in 2011 and 2012.[34] Accordingly, the relevant years for determining if Belcher could satisfy Title VII's employer requirement are 2010, 2011, and 2012.[35]

In his Affidavit, Ronnie T. Stampler, C.P.A., attested to the fact that during the calendar years of 2010, 2011, and 2012 Belcher had no employees.[36] Stampler prepared Belcher's tax statements for Belcher for the 2010, 2011, and 2012 calendar years.[37] Ahumada relies upon his own unsupported Affidavit to create a genuine issue of material fact as to the number of individuals employed by Belcher.[38] While the Court draws all reasonable inferences in favor of the nonmoving party, Ahumada's unsupported affidavits "setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to … defeat a motion for summary judgment."[39] Accordingly, the Court finds that Belcher did not employ 15 or more employees in 20 or more weeks in the calendar years of 2010, 2011, or 2012.[40]

Although Turnberry was not named in the EEOC Charge, Ahumada has named Turnberry as a Defendant in the instant matter. Exhaustion of administrative remedies

---

[33] Rec. Doc. 33-3, Exhibit 7.
[34] Rec. Doc. 33-3, Exhibit 7. The particular allegations include the following: "I began employment with Respondent as an Assistant Manager in August 2007. Later, I became a Property Manager. In May or June of 2011, I informed Alicia Belcher, General Manager, to stop touching me in a sexually explicit manner to no avail. On December 13, 2011, I received a video attachment from Alicia of her husband, Lance Belcher (CEO), masturbating which I only opened on December 15, 2012 [sic]. That day, I complained to Lance about his wife's sexual conduct toward me. He informed me to speak with her. On January 4, 2012, I met with Alicia, Lance, and Kathy Clayton about my complaints. That day Respondent discharged me."
[35] Considering the statute of limitations tolling period.
[36] Rec. Doc. 33-3, Exhibit 3.
[37] Rec. Doc. 33-3, Exhibit 3. Stamper also prepared the tax returns for Turnberry, Forest, and Emerald during the 2010, 2011, and 2012 calendar years.
[38] Rec. Doc. 42-1, pp. 3-4; 8.
[39] *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985)(quoting C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983)).
[40] Rec. Doc. 33-3, p. 22-23.

is a requirement before filing a judicial action under Title VII.[41] As stated by the Fifth Circuit, "the major underlying purpose of the exhaustion requirements … is to ensure that employers have notice of claims of discrimination."[42] Although Ahumada did not name Turnberry as his employer in his EEOC charge, the Court finds that Turnberry did receive notice of his claims of discrimination. In response to the EEOC investigation, Turnberry submitted a response wherein it claimed to be Ahumada's employer, denied Ahumada's charges of discrimination, and asserted that it could not satisfy Title VII's definition of employer.[43] While the Court will not dismiss Plaintiff's claims for failure to exhaust administrative remedies against Turnberry at this juncture, it must nevertheless dismiss Plaintiff's claim against Turnberry for another reason. The Court finds that the uncontroverted evidence shows that Turnberry does not meet the statutory requirements of employer to trigger Title VII coverage. Again, the Court looks to Mr. Stamper's Affidavit, wherein he attested to the fact that Turnberry did not employ 15 or more employees for 20 or more weeks during the calendar years of 2010, 2011, and 2012.[44] Turnberry's Quarterly Wage and Tax Reports for the pertinent years reflect the same.[45] Once again, Ahumada's reliance on conclusory statements within his Affidavit is insufficient to create a genuine issue of material fact as to the number of employees employed by Turnberry during the relevant years.[46]

Accordingly, based upon the record before it, the Court finds that neither of the Defendants, in their individual capacities nor in the aggregate for that matter, employs

---

[41] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).
[42] *Harris v. Honda*, 213 Fed.Appx. 258, 262 (5th Cir. 2006).
[43] Rec. Doc. 33-3, Exhibit 1.
[44] Rec. Doc. 33-3, Exhibit 3.
[45] Rec. Doc. 33-3, p. 22. Rec. Doc. 43-1, Exhibit 20.
[46] Rec. Doc. 42-1, pp. 4-5.

the requisite number of employees to trigger coverage under Title VII. Hence, on this finding alone, the Court lacks subject matter jurisdiction over Plaintiff's claims, unless there is merit in his joint employer argument.

**B.     Joint Employer for Purposes of Title VII**

Ahumada has also alleged that named Defendants, Belcher and Turnberry, along with two other entities, Forest and Emerald, were his joint employers. Notwithstanding the fact that Forest and Emerald have not been named as Defendants or served with the *Complaints* in this case, the Court finds that Ahumada's argument fails on summary judgment.[47]

The Fifth Circuit has held that the term "employer" as used in Title VII of the Civil Rights Act was meant to be liberally construed.[48] Based on this liberal construction, "the rule has emerged that superficially distinct entities may be exposed to liability upon a finding that they represented a single, integrated enterprise:  a single employer."[49] Courts consider the following four factors to determine whether the distinct entities should be treated as a single, integrated enterprise: interrelation of operations; centralized control of labor relations; common management; and common ownership or financial control.[50] Courts place great emphasis, however, on the second factor, to the point that "[t]he critical question to be answered [now] is: What entity made the final decisions regarding employment matters related to the person claiming

---

[47] Rec. Doc. 1; Rec. Doc. 24.
[48] *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983).
[49] *Id.* at 404.
[50] *Id.*

discrimination?"[51] In answering this question, the Court finds that the undisputed evidence shows that Turnberry was Ahumada's sole employer.

Contrary to Ahumada's assertions otherwise, Belcher simply served as a management company with the sole responsibility of managing properties.[52] Therefore, the fact that Plaintiff may have received documentation or policies on Belcher letterhead is not determinative of a joint employer relationship. In *Skidmore v. Precision Printing and Packaging*, the Fifth Circuit rejected a similar argument where a Precision Printing employee claimed a joint employer relationship existed between her employer and Anheuser-Busch, because she received a corporate letter of commendation that referred to her as an employee of the latter.[53] Instead, the Fifth Circuit found that Anheuser-Busch was not Skidmore's employer for Title VII purposes because such a reference on Anheuser-Busch letterhead was insufficient evidence to rely upon in determining who made the ultimate employment decisions about Skidmore.[54] Instead, the court focused on the testimony of Precision's human resource director who explained that it was Precision who hired, fired, promoted and demoted employees without consulting Anheuser-Busch and that Anheuser-Busch simply served as a third-party administrator of its benefits program.[55] Like *Skidmore*, the Court finds that the undisputed evidence shows that it was Turnberry that ultimately made the employment decisions regarding Ahumada. Turnberry made the decision to terminate Ahumada from its employ, and this is reflected in the Separation Notice as well as Turnberry's

---

[51] *Id.* (quoting *Odriozola v. Superior Cosmetic Distributors, Inc.*, 531 F.Supp. 1070, 1076 (D.P.R. 1982)).
[52] Rec. Doc. 33-3, p. 28.
[53] *Skidmore v. Precision Painting and Pkg., Inc.*, 188 F.3d 606 (5th Cir. 1999).
[54] *Id.* at 617.
[55] *Id.*

DM No. 1681            11

response submitted in response to the EEOC Charge.[56] Lance Belcher further testified that Belcher never employed Ahumada.[57] Plaintiff also admittedly received and the evidence shows that his paychecks came from Turnberry.[58] In fact, Ahumada admitted that he never received a paycheck from Belcher.[59]

The Court further finds that, while Belcher, Turnberry, Emerald, and Forest have some common members in their individual corporate structures,[60] there is no evidence in the record showing that these entities had any common management, or shared equipment, employees, finances, or personnel decisions so as to find they were Ahumada's joint employer. Lance Belcher specifically testified that there was no relationship between Belcher and Forest.[61] He further attested to the fact that there is no interrelation of operations or common management among Turnberry, Belcher, Emerald, and Forest.[62] He further attested to the fact that there is no centralized control of labor relations among these entities.[63] Plaintiff offers no substantiated evidence to controvert this testimony so as to create a genuine issue of material fact. Conclusory statements are not enough to defeat a summary judgment motion. Therefore, the

---

[56] Rec. Doc. 33-3, Exhibit 14. "As shown by the paychecks, Ernesto F. Ahumada was employed by Turnberry Place, L.L.C., not by Belcher Management…Ahumada's termination from Turnberry Place, L.L.C. was not based on sexual harassment or retaliation." *Id.* Rec. Doc. 33-3, Exhibit 17. See also, Rec. Doc. 33-3, Exhibit 16 ("Enclosed is a copy of your Separation Notice with Turnberry Place Apartments.").
[57] Rec. Doc. 33-3, p. 33.
[58] Rec. Doc. 33-3, Exhibit 14, pp. 58-74; Exhibit 15, pp. 68-69, and pp. 73-75.
[59] Rec. Doc. 33-3, Exhibit 15, pp. 68-69. ("Q. Did you [Ahumada] ever receive a paycheck form Belcher Management? A. No."). *Id.*
[60] Lance Belcher and his father, Fred Belcher, are the officers of Belcher Management, which is domiciled in Baton Rouge, Louisiana. Lance Belcher is the only member of Forest, which is also domiciled in Baton Rouge, Louisiana. Fred Belcher and Forest are limited partners of the Emerald, which is domiciled in Covington, Louisiana; Lance Belcher is a general partner. In spite of the corporate composition of these entities, Lance Belcher testified that Belcher Management had no relationship with Forest. Fred Belcher, Lance Belcher, and TPA Manager Inc. are the member/managers of Turnberry, which is also domiciled in Baton Rouge, Louisiana. Rec. Doc. 33-3, Exhibit 2; Rec. Doc. 33-3, p. 29-31. Rec. Doc. 33-3, Exhibits 9, 10, 11, and 12.
[61] Rec. Doc. 33-3, p. 29.
[62] Rec. Doc. 33-3, Exhibit 2.
[63] Rec. Doc. 33-3, Exhibit 2.

Court finds that, based on the evidence, neither of the named Defendants, nor Emerald or Forest, were Ahumada's joint-employers.

The Court further notes that were these four entities Ahumada's joint-employer, they would still fail to satisfy Title VII's statutory definition of employer, because neither Emerald nor Forest had any employees for the 2010, 2011, and 2012 calendar years.[64]

### C. Failure to Exhaust Administrative Remedies

Within the Fifth Circuit, it is well-settled that "courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies."[65] Additionally, "a party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge or it has unfairly prevented the filing of an EEOC charge."[66] It is undisputed that Ahumada only filed an EEOC charge against Belcher. Because the Court has found no merit in Ahumada's joint employer argument, and Ahumada only identified Belcher in his EEOC complaint, the Court now finds itself devoid of jurisdiction over Plaintiff's Title VII claims as to Forest and Emerald. Therefore, Plaintiff's claims as to these entities must be dismissed due to Ahumada's failure to exhaust administrative remedies.

### D. Supplemental Jurisdiction Over Remaining State Law Claims

Because the Court is granting summary judgment on Ahumada's claims arising under federal law, the only remaining claims involve Louisiana law of contract and

---

[64] Rec. Doc. 33-3. Belcher, Forest, and Emerald had no employees for the calendar years of 2010, 2011, and 2012. Turnberry did not employ 15 or more employees for 20 or more weeks during these calendar years.
[65] *Simmons-Myers v. Caesars Entertainment Corp.*, 515 Fed.Appx. 269, 272 (5th Cir. 2013)(quoting *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994)).
[66] *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988).

defamation. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."[67] Although "[d]istrict courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed,"[68] in the Fifth Circuit, the "'general rule' is to decline to exercise jurisdiction over pendant state law claims when all federal claims have been eliminated prior to trial."[69] Accordingly, the Court hereby exercises its right to decline to exercise supplemental jurisdiction over the remaining state law claims.

## IV. CONCLUSION

Accordingly, the *Motion for Summary Judgment*[70] filed by Defendants, Belcher Management, LLC, Turnberry Place, LLC, Alicia Belcher, and Lance B. Belcher is hereby GRANTED dismissing Plaintiff, Ernesto F. Ahumada's, Title VII claims with prejudice.

It is further ordered that Plaintiff's state law claims against Belcher Management and Lance Belcher for breach of contract and defamation against Alicia Belcher are hereby dismissed without prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on June 23, 2014.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[67] 28 U.S.C. § 1367(c) (2014).
[68] *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).
[69] *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).
[70] Rec. Doc. 33.